IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFRY M. AUVE, | : | CIVIL ACTION NO. **1:CV-04-0650** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DEPUTY KNEISS, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

The Plaintiff, currently an inmate at the State Correctional Institution at Mahanoy ("SCI-Mahanoy")[1] filed this civil rights action on March 26, 2004, pursuant to 42 U.S.C. § 1983. (Doc. 1).[2] The Plaintiff also filed an *in forma pauperis* application. (Doc. 2). We then preliminarily

---

[1] Plaintiff was an inmate at SCI-Dallas in July, 2000, through December 20, 2001. (Doc. 1, p. 2 and attached p. 3, ¶ 16.). On December 20, 2001, he was transferred to SCI-Mahanoy. (Doc. 50, p. 3) his present place of confinement. (Doc. 1, attached p. 4, ¶33.). Plaintiff basically alleges that the Defendants, present and former PA DOC employees at SCI-Mahanoy, retaliated against him upon his transfer to SCI-Mahanoy due to the civil action he filed against prison dental staff at SCI-Dallas.

[2] In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Here, all remaining Defendants, as present and former PA DOC employees (Doc. 32, p. 1), are unquestionably state actors.

screened the Complaint pursuant to the Prison Litigation Reform Act of 1995,[3] (the "PLRA").   *See* 28 U.S.C. § 1915.

## I. Background.

In our April 6, 2004, Report and Recommendation, after we reviewed the allegations of the Complaint, we recommended that four (4) of the six (6) Defendants named in the Complaint be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) and one (1) Defendant be dismissed since the claim against him was time barred.   We also recommended that supervisory Defendant Superintendent Klem be dismissed based on the doctrine of *respondeat superior*.   We recommended that the Plaintiff not be allowed to maintain this action pursuant to 28 U.S.C. §1915(e)(2)(B)(iii) against any of the Defendants in their official capacities insofar as it seeks monetary damages against them.   We recommended that the Plaintiff be permitted to proceed only as against Defendant Kneiss on his First Amendment retaliation claim.   (Doc. 7).[4]

On May 3, 2004, the District Court, after Plaintiff's Objections, adopted in part and rejected in part our Report and Recommendation. (Doc. 9).   Specifically, the District Court ordered that "all claims are dismissed as to all parties except the retaliation claim against Defendants Kneiss, Hornug, Unell and Wall."   Defendants Eisworth and Klem were dismissed from the case.

Upon remand of the case, we had the Complaint served on the four (4) remaining Defendants.   The Defendants filed their Answer on July 6, 2004.   Discovery commenced, including

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[4]The correct spelling of Defendant Kniess' name is Kneiss. (Doc. 31, Ex. A).   We shall use the proper spelling.

Plaintiff's deposition (Doc. 24).  Subsequently, on January 12, 2005, the remaining Defendants jointly filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  (Doc. 28).  On January 31, 2005, after being granted an extension of time from the Court, the Defendants timely filed their Statement of Material Facts and Brief in support of their Summary Judgment Motion.  (Docs. 31 & 32).[5]  On March 16, 2005, Plaintiff filed his Brief in opposition to the Defendants' dispositive Motion, along with attached exhibits, including his Declaration.  (Doc. 50).[6]  Defendants' Motion is now ripe for determination.

The remaining four (4) Defendants, all present and former employees of SCI-Mahanoy are: Deputy Superintendent Kneiss, formerly of SCI-Mahanoy and now at SCI-Dallas; SCI-Mahanoy Unit Manager Hornug; SCI-Mahanoy Inmate Employment Supervisor Wall; and  SCI-Mahanoy Program Manager Unell.[7]

The Plaintiff seeks compensatory and punitive damages   (Doc. 1, p. 3, ¶ V.).

## II.  Summary Judgment Standard.

_____

[5]Defendants exhibits in support of their Motion are attached to their Statement of Material Facts, Doc. 31.

[6]Plaintiff did not file a responsive statement of material facts controverting each of the Defendants' numbered statement of material facts as required by Local Rule 56.1, M. D. Pa. Thus, we shall accept the Defendants' Statement of Material Facts, Doc. 31, which, as required, are supported by their exhibits.

Plaintiff's opposition Brief contains a Statement of Facts ("SF") Section, Doc. 50, pp. 1-4. However, these facts do not respond to Defendants' numbered facts, nor are they supported by citation to evidence.  We further find that Plaintiff's facts contain many hearsay statements unsupported by evidence.

[7]Defendants note that Defendant Wall retired from the DOC in July, 2004.  (Doc. 32, p. 1, n. 1).

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

In examining a motion for summary judgment, the court does not resolve the questions of disputed facts, but simply decides whether there is a genuine issue of fact which must be resolved

at trial or whether the evidence is so one-sided that one party must prevail as a matter of law. *Groff v. Continental Insurance Co.*, 741 F.Supp. 541 (E.D. Pa. 1990). "Where factual controversies exist, disputes over material facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Metro Transportation Co. v. North Star Reinsurance Co.*, 912 F.2d 672, 678 (3d Cir. 1990), *reh. den.*

## III. Discussion.

As noted, we adopt the Defendants' Statement of Material Facts since Plaintiff failed to controvert them.  We shall not reiterate them herein.  (See Doc. 31).

> 1.  *Statute of Limitations.*

The Plaintiff alleges that in July, 2000, while he was incarcerated at SCI-Dallas, he filed a civil rights action against various personnel of the prison's dental department.  Six months after this suit, the Plaintiff alleges that former Defendant CO Eiswerth at SCI-Dallas began harassing him and in October, 2001, Defendant Eiswerth issued a false misconduct report against him in retaliation for the filing of his civil suit in order to get him transferred out of SCI-Dallas.  (Doc. 1, p. 2 and attached p. 2).  Plaintiff avers that he was exonerated of the misconduct charges, but that he was transferred to SCI-Mahanoy on December 20, 2001. (*Id*. at attached pp. 2-3).  Consequently, the Plaintiff filed grievances and complaints against Defendant Eiswerth.  As stated above, we found that the Plaintiff's retaliation claim against Defendant Eiswerth was time barred, and the District Court dismissed this Defendant.[8]

---

[8]We noted in our prior Report and Recommendation that the Third Circuit held in an unreported appeal of a case decided by this Court that the Plaintiff inmate did not establish a retaliation claim when he alleged that an intrastate prison transfer was done in retaliation for the

In their Summary Judgment Brief, Defendants first argue that all of the claims against them accruing prior to March 26, 2002, should be dismissed since they are time barred by the two-year statute of limitations.  The Defendants argue that several of Plaintiff's claims, such as his claims that upon his December, 2001, transfer to SCI-Mahanoy, he was not given proper review procedures, that he was placed in Administrative Custody ("AC") for nineteen (19) days[9] without cause, hearing and explanation, and that he was denied an immediate work assignment in the Arts & Crafts Shop (Doc. 1, ¶'s 4, 5, 11, 16-20), are barred by the two-year statute of limitations since they clearly arose before March 26, 2002, which is the commencement date of Plaintiff's statute of limitations period in this case. (Doc. 32, pp. 3-4).

Initially, we repeat that the District Court has dismissed all claims as to all parties except the retaliation claim against the remaining four (4) Defendants.  (Doc. 9).  However, to the extent that this retaliation claim includes Plaintiff's above stated claim regarding his placement in AC status, which arose prior to March 26, 2002, we agree with the Defendants that it is time barred.

The Plaintiff's stated claim against the remaining Defendants which arose prior to March 26, 2002, is time barred by the two-year statute of limitations.  The above stated alleged retaliation regarding his placement in AC status taken by Defendant Kneiss, which the Plaintiff admits commenced on December 20, 2001, when he was transferred to SCI-Mahanoy, occurred more

---

filing of his lawsuit, but failed to offer any evidence to suggest retaliation.  *See Vega v. Kyler*, Appeal No. 03-1936, slip op. (3d Cir. 2004).

[9]Plaintiff was placed in AC on December 20, 2001, and released into the general population on January 7, 2002.  Therefore, Plaintiff was actually in AC for about seventeen (17) full days. (Doc. 50, SF, p. 2).

than two years before he filed his § 1983 action in this case.

The Plaintiff clearly discovered his stated cause of action against Defendant Kneiss in this case well over two years before he filed this case in March, 2004.   The law is clear that Section 1983 claims are subject to a two-year statute of limitations.  *See Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985). Further, under Pennsylvania's discovery rule, the statute of limitations begins to run when the Plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury.  *Doe v. Kohn, Nast & Graf, P.C.*, 866 F. supp. 190 (E.D. Pa. 1994); *Cochran v. GAF Corp.*, 633 A.2d 1195 (Pa. Super. 1993).  It is abundantly clear in this case, and readily admitted by the Plaintiff, that he first discovered his stated AC placement cause of action against Defendant Kneiss on December 20, 2001, immediately upon his transfer to SCI-Mahanoy.[10]

The Plaintiff states that he was given a proper AC hearing by the PRC on January 3, 2002, and that he was released into general population on January 7, 2002.  (Doc. 50, SF , p. 2).  The Plaintiff thus knew of his claim that Defendant Kneiss improperly placed him in AC without cause and without giving him a hearing by January 7, 2002, at the latest.  The statute of limitations for this claim would then have expired on January 7, 2004.

---

[10]Plaintiff states that he was exonerated on Defendant Eiswerth's misconduct report, but that he was still made to transfer to SCI-Mahanoy on December 20, 2001. (Doc. 1, attached pp. 2-3).  It is clear that Plaintiff was exonerated of the misconduct charges while he was at SCI-Dallas. (*Id.*).  Thus, even if the statute of limitations for filing the stated  § 1983 claim against Defendant Kneiss regarding his placement in AC with no explanation or hearing was tolled until the Plaintiff was given the report from the Prison Review Committee ("PRC") on December 30, 2001, (Doc. 50, Statement of Facts, p. 2), the Plaintiff's stated claim against Defendant Kneiss should have been filed within two (2) years of the date he was given the PRC report, *i.e.*, by December, 30, 2003.

The Plaintiff argues that he did not try and pursue any of his retaliation claims against the Defendants until November, 2003, after he found out that Defendant Kneiss had left SCI-Mahanoy, and that he did not know at first that his constitutional rights were violated.  (Doc. 50, ARG, p. 1).[11] Plaintiff also claims that the retaliatory acts continued against him until November, 2003, and that based on the time of discovery rule or the continuing injury rule, the statute of limitations should not have begun to run until November, 2003.   The Plaintiff concludes by conceding that "[i]f anything should be barred by the statute of limitations would be the Plaintiff's claim under the Fourteenth Amendment." (Doc. 50, ARG, p. 2).   It is unclear if Plaintiff is referring to his claim that he was placed in AC status without a hearing or notice in violation of the Fourteenth Amendment Due Process Clause.[12]

---

[11] Plaintiff's Brief begins with page number 1 for both the Statement of Facts (SF) section and the Argument (ARG) section.  Doc. 50.  Thus, for clarity, we shall specify both the section and page number of Plaintiff's Brief.

[12] Plaintiff stated in his Complaint that former Defendant Klem started working as Superintendent at SCI-Mahanoy around the time that he was denied a prison job in the craft shop due to retaliation. (Doc. 1, attached p. 3).  The Plaintiff did not allege that Klem had any personal involvement in the alleged retaliation against him or in his placement in administrative custody upon his arrival at SCI-Mahanoy.  (*Id*. at attached pp. 3-4).  Thus, we find no merit to Plaintiff's argument that he did not try and pursue his retaliation claim against Defendant Kneiss until November, 2003, after he found out that Kneiss had left SCI-Mahanoy, since Plaintiff admittedly knew that Klem, his former counselor at SCI-Dallas, started working as Superintendent at SCI-Mahanoy at the time his AC placement claim arose.  Plaintiff knew at this time that Klem, and not Kneiss, was in charge at the prison.  Plaintiff did not state any reason as to why he could not have timely gone to Klem with his stated claim or why he had to wait for Kneiss to leave the prison when he knew that Klem was the new Superintendent well before Kneiss' transfer in November, 2003.

Notwithstanding Plaintiff's argument that the statute of limitations should be tolled until November, 2003, we find that the Plaintiff was aware of his stated claim regarding his AC placement at the latest by the end of December, 2002.  Thus, we concur with the Defendants that the Plaintiff's stated § 1983 claim which relates to conduct that occurred before March 26, 2002, should be dismissed as time barred.[13]   Specifically, we find that Plaintiff's claim that he was improperly placed in AC status by Defendant Kneiss for nineteen (19) days is time barred. However, we find Plaintiff's claim that he was denied a craft shop work assignment by the Defendants based on retaliation not to be time barred, since this alleged retaliation is construed as continuing until January, 2004, when Plaintiff was given a carpenter shop job. (Doc. 50, SF, p. 4).

2.   *Retaliation Claim Against Defendants Kneiss, Wall, Hornug and Unell.*

The Plaintiff claims that Defendants Kneiss, Wall, Hornug and Unell violated his First Amendment rights by retaliating against him for his filing of a civil action against the dental staff at SCI-Dallas.  The Plaintiff's first claim in his Complaint as against Defendant Deputy Superintendent Kneiss is that upon his transfer to SCI-Mahanoy on December 20, 2001, he was seen only by Kneiss, who inquired about his civil action, and that he was then placed in AC status without a report from the PRC.  The Plaintiff states that he was not timely seen by the PRC until January 3, 2002.  Plaintiff states that he was held in AC status for nineteen (19) days but did nothing wrong to justify this AC status.  We have found this claim to be time barred.

---

[13]Further, the Plaintiff cannot claim that he did not timely file his stated claims against the remaining Defendants due to fear of additional retaliation by former Defendant Eiswerth, the original alleged retaliatory prison official, since he and Eiswerth were no longer together in the same prison as of December 20, 2001, well over two (2) years before he filed the instant case.

The Plaintiff, as his second claim, states that Defendants Unell, Wall and Hornug would not hire him for a prison job at SCI-Mahanoy and gave him "a run-around on jobs" because Defendant Deputy Superintendent Kneiss ordered them not to give him a craft shop job in retaliation for his stated civil suit.  (Doc. 1 at pp. 3-4).  Thus, Plaintiff claims that despite being "the best cabinet maker in the system" Defendants Unell, Wall and Hornug would not give him a proper job at SCI-Mahanoy in the craft shop because Kneiss did not allow them to hire him.  (*Id*.).  Plaintiff also avers that after Defendant Kneiss was transferred back to SCI-Dallas in October, 2003, he was given a job in the carpentry shop at SCI-Mahanoy in January, 2004.  (*Id*. at p. 4).  We have found this claim not to be time barred.

Plaintiff alleges a retaliation claim against Defendant Kneiss, as well as against Defendants Unell, Wall and Hornug.  In *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001),  the Court indicated that, as a threshold matter in a retaliation case, the prisoner must show that the conduct which led to the alleged retaliation was constitutionally protected.  Here, Plaintiff has met this threshold pleading requirement of such a claim, since he asserts that the Defendants retaliated against him for his filing of a civil action against prison officials at SCI-Dallas, which is a First Amendment claim. Specifically, the Plaintiff claims that Defendant Kneiss prevented him from getting a job for which he had the requisite skills.  The Plaintiff states that Defendants Unell, Wall and Hornug would not hire him for a craft shop job because of Defendant Kneiss.  (*Id*. at pp. 3-4).

In *Rauser*, the Court established a three-step analysis in evaluating a retaliation claim.  "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected."  *Id*. at 333.  In *Rauser,* the protected right

was the prisoner's refusal to participate in a religious program.  Here, the Plaintiff alleges that the retaliation was based on his First Amendment speech rights.  We have previously found that the Plaintiff has satisfied the first step in the *Rauser* formula with respect to Defendant Kneiss.  The constitutional right of an inmate to seek a remedy for his grievances (*i.e.* filing a civil suit against the Dental Department of SCI-Dallas) without suffering retaliation was well-established at the time the violations alleged by the Plaintiff occurred in this case.  *See Franco v. Kelly*, 854 F. 2d 584 (2d Cir. 1988).  *See also Morales v. Mackalm*, 278 F. 3d 126, 131 (2d Cir. 2002) (A prisoner's filing of a grievance against a CO is protected by the First Amendment, and retaliation in response to such a grievance is an actionable claim.).  Clearly, Plaintiff engaged in protected conduct when he filed his civil action against the prison dental staff at SCI-Dallas.

The Defendants argue that while Plaintiff engaged in protected activity when he filed his previous civil action against the dental staff at SCI-Dallas, he offers no proof that the alleged retaliatory act of refusing him a craft shop work assignment was because of his previous civil action, and that  he cannot prove the requisite causal nexus between the filing of his civil action and the craft shop job refusal.  (Doc. 32, p. 6).

Indeed, Plaintiff must show a causal connection between the filing of his prior civil action against members of the dental staff at SCI-Dallas in July, 2000, and the mentioned alleged retaliatory conduct by the remaining four (4) Defendants in this case, *i.e.* retaliatory refusal of a craft shop work assignment.  There is no dispute that Defendant Kneiss was Deputy Secretary at SCI-Dallas for a time while Plaintiff was at this prison.  However, the Defendants have shown that Kneiss was transferred to SCI-Dallas in September, 1999, about ten (10) months before Plaintiff filed his

civil action against the dental staff at SCI-Dallas. (Doc. 31, Ex. A).  The Plaintiff was then admittedly transferred to SCI-Mahanoy on December 20, 2001, about seventeen (17) months after he filed his civil action.  The Defendants state that the mere temporal sequence of the stated events, *i.e.* the Plaintiff's civil action preceded the alleged retaliation, is not sufficient to show a causal connection between the two events.  The Plaintiff correctly states that the chronology of his alleged events can be construed as lending support for an inference of retaliation.  *See Rauser*, 241 F.3d at 334.

To establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *Vega, supra*.  In our case, Plaintiff alleges that, upon his transfer to SCI-Mahanoy, he was met by Defendant Kneiss, who inquired about his civil action against the SCI-Dallas dental department. (Doc. 1, attached p. 3, ¶ 16. & Doc. 50, ARG, p. 3, and Doc. 31, Ex. E, pp. 24-25).  Plaintiff then suggests the filing of his civil action as the retaliatory motive  for Defendant Kneiss' alleged conduct of preventing him a craft shop work assignment by the other remaining Defendants.  Plaintiff states in his Brief that prior to this transfer to SCI-Mahanoy, CO Eiswerth and another CO told him that they were "going to call his buddy Kneiss" so that Plaintiff would not be placed in the Mahanoy craft shop.  (Doc. 50, ARG, pp. 3-4).  Plaintiff also states that the Superintendent at SCI-Dallas told him that he called Mahanoy about Plaintiff working in the craft shop.  Plaintiff indicates that since Kneiss knew him very well, he was responsible for preventing him from working in the craft shop.  (*Id*., p. 5).  Defendant Kneiss admits that he directed the staff at SCI-Mahanoy not to assign Plaintiff in the craft shop, based on security concerns, until Plaintiff demonstrated positive job habits and completed a period of stable behavior.

(Doc. 31, Ex. A).

Plaintiff states that there is no merit to Kneiss' averments in his declaration that he could not receive an immediate craft shop job based on the premise that his transfer was due to an alleged assault and alleged threat to a staff member, since the misconduct charges against him were dismissed before his transfer. (*Id*.). Plaintiff avers in his Declaration that he was not a security risk based on the PRC report. (Doc. 50, Decl.). Plaintiff's exhibits show that the misconduct charges against him were dismissed. (Doc. 50, Exhibits 1J & 1K). Thus, there is a genuine issue of material fact as to whether the Plaintiff was denied a craft shop work assignment due to security concerns. The Defendants also argue that the Plaintiff has failed to meet the second element of a retaliation claim since he had no right to placement into a specific work assignment.

"Next, a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials." *Rauser*, 241 F.3d at 333.[14]  *Rauser* also requires, as a threshold matter, that Plaintiff "prove that the conduct which led to the retaliation was constitutionally protected." *Id*.  As stated, Plaintiff alleges that his July, 2000, civil action against the dental staff at SCI-Dallas was the First Amendment protected conduct that led to the retaliation by the Defendants.  It is undisputed that the filing of Plaintiff's civil action was protected by the First Amendment.

---

[14]*Rauser* held that the Plaintiff-prisoner meets the adverse action requirement if he shows that the action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  241 F.3d at 333 (citations omitted).

Defendants argue that the Plaintiff cannot show an adverse action since he did not have a protected liberty interest in the privilege he was allegedly denied, *i.e.*, a craft shop job assignment. (Doc. 32, pp. 7-9).  However, as the *Rauser* Court stated:

> We hold that the relevant question is not whether Rauser had a protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right.

Thus, the issue is whether Plaintiff was denied the privilege of an immediate assignment to the craft shop in retaliation for his civil action, and not whether he had a protected interest in this privilege.  We find that, while an issue of fact exists as to whether Defendant Kneiss retaliated against Plaintiff due to his civil action, there is insufficient evidence against the other three Defendants to show causal connection between the exercise of his First Amendment right and the adverse action against him.

We view the Plaintiff's claim that Defendant Kneiss prevented him from getting a proper prison job as the alleged adverse action following the filing of his civil complaint in Luzerne County. Plaintiff has sufficiently shown that he suffered an adverse action by Kneiss as a result of his lawsuit.[15]  However, this stated retaliatory conduct which the Plaintiff claims to have suffered, has

_____

[15]      With respect to Plaintiff's claim that he was  deprived of craft shop job, we agree with Defendants that he has failed to claim a deprivation of a protected property interest. As the Court in *Cummings v. Banner,* 1991 WL 238140 *5, E.D. Pa. 1991, stated:

> It is uniformly well established throughout the federal circuits that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the fourteenth amendment. *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir.1989). *See also Brian v. Werner,* 516 F.2d 233, 240 (3d Cir.1975) (inmates expectation of keeping job is not a property interest entitled to due process protection);

not been sufficiently linked to Defendants Unell, Wall and Hornug.  Plaintiff has only asserted that

Defendants Unell, Wall, and Hornug denied him a craft shop work assignment because Defendant

Kneiss would not let them give him such an assignment.  Plaintiff has not shown that these three

(3) Defendants denied him the work assignment because of his civil action against staff at SCI-

Dallas. Plaintiff does not show that these three Defendants questioned him about his lawsuit. (Doc.

31, Ex. E, pp. 24-25).

In his deposition, Plaintiff testified that, prior to his transfer, his counselor at SCI-Dallas

assured him that his concern that Defendant Kneiss would retaliate by denying him a craft s hop

job at SCI-Mahanoy was taken care of and that "everything's fine" and he was going in the craft

shop. (Doc. 31, Ex. E, pp. 33-34).  Plaintiff also testified that Defendant Wall initially told Defendant

Unell that there was no reason why Plaintiff should not have a craft shop job.  However, Plaintiff

---

*Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980) (prisoner's expectation
of keeping prison job does not amount to a property interest entitled
to due process protection); *Adams v. James,* 784 F.2d 1077, 1079
(11th Cir.1986) (assignment to job as law clerk does not invest inmate
with a property interest in continuation as such);
*Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir.1986) (Constitution
does not create a property interest in prison employment);
*Coakley v. Murphy,* 884 F.2d 1218, 1221 (9th Cir.1989) (no
constitutional right to continuation in work release program to
implicate property interest under fourteenth amendment); *Flittie
v. Solem,* 827 F.2d 276, 279 (8th Cir.1987) (inmates have no
constitutional right to be assigned a particular job).

However, based on *Rauser*, the proper legal standard for a retaliation claim is not
whether Plaintiff had a protected liberty interest in the privileges he was denied; rather, it is
whether he was denied these privileges due to his lawsuit.  Thus, the Plaintiff has sufficiently
shown that he suffered an adverse action with respect to his retaliation claim against Defendant
Kneiss that he was denied a work assignment in the prison craft shop.

states that Defendant Unell later told him that according to Defendant Kneiss, Plaintiff was not going to get a craft shop position. (*Id.*, p. 56).  Plaintiff admits that he was also told by these three Defendants that he was not going to get the job as long as Defendant Kneiss was at the prison. (*Id.*, p. 71).  Plaintiff testified that his claim against Defendant Hornug, Wall, and Unell was based on what they did to support Defendant Kneiss and Kneiss' alleged retaliatory action of preventing Plaintiff's craft s hop job because of Plaintiff's civil lawsuit.   Plaintiff stated that these three Defendants "basically were tools for Mr. Kneiss." (*Id.*, p. 82).  As stated, Plaintiff has not shown that the alleged conduct of Defendants Unell, Wall and Hornug was due to his lawsuit.  Rather, he only claims that these Defendants were supporting Defendant Kneiss' action.

Additionally, it is undisputed that these three Defendants did not assign Plaintiff to the craft shop upon direction from their superior, Defendant Kneiss. (Doc. 50, Ex. 4, pp. 4-5).   It is undisputed that Defendant Kneiss directed his staff not to assign Plaintiff in the craft shop. (Doc. 31, Ex. A, ¶ 11.).

Defendant Kneiss avers that, based on his familiarity with Plaintiff's history for temper and prior altercations, he decided that Plaintiff had to first demonstrate positive, secure and stable behavior prior to a craft shop job assignment. (Doc. 31, Ex. A).   Plaintiff has shown that his misconduct charges issued against him at SCI-Dallas, which precipitated his transfer, were dismissed, and that after his transfer, Defendant Kneiss' reasons for not allowing his craft shop job assignment were unfounded, since the threat charges against him were dismissed. (Doc. 50, Exs. 1D, 1J).

16

The Plaintiff avers that the Defendants' conduct, in part, prevented him from getting his prison job with the craft shop.[16] As stated, a causal connection between Plaintiff's First Amendment right and this alleged adverse action has been shown only as to Defendant Kneiss.

We find that genuine issues of material fact exist as to whether Plaintiff was denied a craft shop job for security reasons and as to whether Plaintiff had to demonstrate proper work habits prior to a craft shop assignment, or whether this assignment was prevented by Defendant Kneiss in retaliation for Plaintiff's lawsuit.  (Doc. 31, Ex. A, ¶ 6., and Doc. 50, Plaintiff's Decl.).[17]

Plaintiff has sufficiently shown that his civil lawsuit was a substantial motivating factor in Defendant Kneiss' action of preventing him from getting a craft shop assignment.  Plaintiff has shown that Defendant Kneiss was well aware of his lawsuit and questioned him about it.  While Defendant Kneiss offers security reasons for his stated conduct, the Plaintiff has shown that his misconduct charges which, in part, gave rise to the security concerns, were dismissed.  Thus, we

---

[16]As previously stated, despite Plaintiff's claim that he needed a job of responsibility for parole purposes, Plaintiff has not implicated a liberty interest with respect to his prison job in the craft or carpentry shop.  "The control of prison educational and rehabilitation programs is a matter of prison administration and does not rise to the level of a federal claim in most instances." *Coffey v. Ingram*, WL 82855, *1 (E.D. Pa. 1988) (Citing *Hayes v. Cuyler*, 475 F.Supp. 1347, 1350 ( E.D. Pa. 1979).  Here, Plaintiff claims that the Defendants refused to allow him a position with the prison craft shop.  The Plaintiff had no right to participation in this prison program and, thus, his deprivation of this position does not amount to a constitutional violation.  Plaintiff also indicates that in January, 2004, he was given a job in the carpentry shop and that he has been there ever since.  (Doc. 50, ARG, p. 9).  However, as discussed, this is not the issue herein.

[17]Notwithstanding that the Plaintiff had no recognizable constitutional right to a particular custody status, *see Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), this is not the issue with respect to evaluating a constitutional retaliation claim.

find that since the Plaintiff has produced evidence, more than a scintilla, from which a reasonable jury could decide that his lawsuit was a substantial and motivating factor in Defendant Kneiss' action, the issue of causation in this case has to be decided by the factfinder. *See Booth v. Pence*, 354 F.Supp.2d 553, 560 (E.D. Pa. 2005)

Therefore, we shall recommend that the Defendants' Summary Judgment Motion be granted with respect to Defendants Unell, Wall, and Hornug, and that Judgment be entered in favor of these three (3) Defendants and against the Plaintiff. We shall recommend that the Defendants' Summary Judgment Motion be denied with respect to Plaintiff's First Amendment retaliation claim against Defendant Kneiss.

## IV.  Recommendation.

Based on the foregoing, it is respectfully recommended that the Defendants' Motion for Summary Judgment **(Doc. 28)** be granted with respect to Defendants Wall, Hornug and Unell and that Judgment be entered in favor of these three (3) Defendants and against the Plaintiff.  It is also recommended that Defendants' Summary Judgment Motion be denied with respect to Plaintiff's First Amendment retaliation claim against Defendant Kneiss.[18]

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 1, 2005**

---

[18]Since the parties have not consented to proceed before the Magistrate Judge, it is not recommended that this case be remanded to the undersigned.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFRY M. AUVE,               :      CIVIL ACTION NO. **1:CV-04-0650**
                                 :
         Plaintiff        :      (Judge Rambo)
                                   :
         v.             :      (Magistrate Judge Blewitt)
                                   :
DEPUTY KNEISS,          :
et al.,                        :
                                 :
         Defendants      :

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 1, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

19

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_____  s/ **Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: June 1, 2005**